## Surís *v.* Quiñones et al.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 439.—Resuelto en mayo 25, 1911.

Acción Reivindicatoria—Enmiendas sin Jurar a una Demanda Jurada.—
Falta de Contestación a las Enmiendas.—Cuando una demanda jurada y
contestada en debida forma por los demandados, es enmendada, sin que éstas
enmiendas aduzcan hechos esenciales para el pleito y sin que hayan sido jura-
das, no por eso está el tribunal obligado a declarar como ciertos los hechos
aducidos en dichas enmiendas, pues aun en el supuesto de que expresaran
hechos esenciales, tampoco podría el tribunal estimar como ciertos y probados
los hechos alegados en la demanda primitiva que fueron negados oportuna-
mente.

Negación por Información y Creencia—Hechos que Constan en Documentos
Públicos.—Aun cuando los hechos expresados en una demanda y negados en
la contestación consten en documentos públicos, el demandado que no ha
intervenido personalmente en dichos documentos, puede fundar su negación
en información y creencia, no estando obligado por virtud de una demanda
jurada a examinar todos los archivos para cerciorarse de la certeza de los
hechos expuestos en aquélla.

Id.—Contestación a una Demanda—Negación de los Hechos Esenciales de
una Demanda—Conclusiones de Derecho.—El demandado sólo está obligado
a negar las alegaciones esenciales de la demanda, pudiendo hacer caso omiso
en su contestación de las conclusiones de derecho alegadas en aquélla, pero si
las niega en su contestación, no por eso queda ésta anulada y defectuosa.

Id.—Negación de Parte de los Hechos Expuestos en un Párrafo.—Cuando un
párrafo de la demanda contiene hechos que en parte son ciertos y en parte nó,
el demandado debe negar cada parte separadamente.

Validez de Documentos Privados—Falta de dos Testigos—Obligación.—Según
la Ley 1ª., título 1°., libro 1°. de la Novísima Recopilación, de cualquier
manera que el hombre quiera obligarse, queda obligado, y no adolece de vicio
alguno de nulidad un documento privado por carecer de la firma de dos
testigos.

Id.—Documentos Públicos—Interpretación de Ley—Testigos de un Docu-
mento Privado.—Los preceptos de la ley 61, título 18, partida 3ª., se refieren
a los requisitos de los documentos públicos, exigidos también por nuestra Ley
Notarial y la Ley Hipotecaria, y no son aplicables a los documentos privados,
para los cuales no se exige el requisito de la firma de dos testigos.

Terceros—Conocimiento de la Existencia de un Contrato—Venta—Posesión
de la Cosa Vendida.—No puede invocar el carácter de tercero, el que aun
cuando no haya tenido intervención en un contrato de venta, haya comprado
con conocimiento de que sus vendedores no eran dueños ni tenían la posesión
de la cosa vendida.

Admisión de Pruebas—Objeciones Infundadas.—Objetada la admisión de un
documento por ser falsas las firmas que aparecen al pie del mismo, y justifi-
cada en el acto del juicio la autenticidad de las mismas, se supone que la parte
que se opuso a su admisión renuncia a todas las demás objeciones.

Acción Reivindicatoria—Prescripción—Justo Título y Buena Fe.—Habiendo transcurrido más de diez años entre presentes de la posesión de la finca que se trata de reivindicar, con justo título y buena fe, el que posee ha adquirido por prescripción el dominio de la misma.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. J. S. Amill Negroni y Fernando Vázquez.*

. Abogados de los apelados: *Sres. Benito Forés y Antonio Sarmiento.*

El Juez Asociado Sr. MacLeary, emitió la opinión del tribunal.

El presente es un pleito entablado por Suris contra Quiñones y el Banco de Puerto Rico, para reivindicar cierto predio de terreno conteniendo cuarenta cuerdas, y los frutos producidos por el mismo; en cuyo pleito se dictó sentencia a favor de los demandados, en 7 de mayo de 1909. Ha ocurrido alguna demora necesaria en la preparación, sumisión y consideración de las cuestiones envueltas en dicho pleito, a causa del gran volumen de los autos, y de la enfermedad y subsiguiente fallecimiento del juez de esta corte, a quien este caso fué primeramente asignado, como ponente. La demanda fué presentada en 17 de septiembre de 1907, por *Juan Surís Cardona* v. *Francisco P. Quiñones y El Banco de Puerto Rico,* para la reivindicación de una finca rústica y los frutos de la misma. Dicha demanda es muy extensa y consigna detalladamente los hechos en que confía el demandante; pero todo el asunto, considerado en su totalidad, constituye una acción reivindicatoria en la que se reclama el título y la posesión de los terrenos descritos, y los frutos que desde el principio hasta el fin de este pleito, hayan sido producidos por la finca que se trata de reivindicar. La súplica de la demanda que está dividida en cuatro párrafos, equivale en sustancia a la pretensión de reivindicar el título y la posesión de las cuarenta cuerdas de terreno objeto del pleito, y dos mil dollars, en concepto de daños y perjuicios sufridos por la detentación de las mismas; y además una indemnización por los daños y

perjuicios que se originen durante el tiempo que transcurriere desde la época en que se entabló la demanda hasta aquélla en que se dictare la sentencia, así como todas las costas del pleito.

Los dos demandados contestaron separadamente, negándose por parte del demandado, Quiñones, casi todas las alegaciones contenidas en la demanda, por falta de suficiente información; y negándose unas de dichas alegaciones expresamente, y otras taxativamente. Además alega, como materia nueva de defensa, la posesión personal de la propiedad objeto de la demanda, desde el 14 de agosto de 1905, y la posesión por parte de dueños anteriores de quienes ha derivado su título, desde mucho tiempo antes del año 1887, alegando la prescripción e invocando la Ley de Prescripción. Niega, además, que el demandante jamás haya tenido la posesión de la finca en litigio, o que jamás haya pagado contribuciones por la misma, o que jamás la haya declarado a los efectos del pago de las contribuciones. El demandado, Quiñones, alega también que los títulos de dominio del terreno en litigio, en virtud de los cuales reclama dicho terreno, han sido debidamente inscritos en el registro de la propiedad, con arreglo a la ley. Por cuya razón, suplica que se desestime la demanda, con las costas al demandante. El otro demandado, o sea el Banco de Puerto Rico, presenta una contestación análoga.

Se celebró el juicio ante el Juez Schoenrich, en la corte de distrito, en cuyo acto se presentó una vasta cantidad de pruebas testificales y documentales; y finalmente, en 7 de mayo de 1909, el juez sentenciador declaró que la ley y los hechos estaban a favor de los demandados, y desestimó la demanda, con una orden imponiendo las costas al demandante. Contra esta sentencia se interpuso recurso de apelación, y el caso fué vigorosamente controvertido ante este tribunal, tanto por alegatos esmerados, como por extensos informes orales, y se halla finalmente en nuestro poder, para su resolución. Examinemos, pues, las cuestiones planteadas en el pleito.

Durante los años 1860 a 1870, los hermanos Don José Salvador y Don Ramón María Surís compraron a diversas personas mediante escrituras públicas, varias parcelas de tierra hasta el número de diez y siete, radicadas en el barrio de Sabana Eneas de San Germán y de las cuales han presentado en este pleito copia certificada de diez y seis de esos títulos.

En 26 de noviembre de 1870 ambos hermanos reconocieron haber recibido del Hospital de Caridad de San Germán la cantidad de seis mil escudos españoles, y para responder de ellos y de sus intereses, hipotecaron a favor de dicha institución cuarenta cuerdas de tierra que dijeron ser parte de las setenta de bajura que tenían y poseían en propiedad en el barrio de Sabana Eneas, y las que colindaban por el norte y oeste con la hacienda Carolina; por el sud con el camino de Cabo Rojo a San Germán y por el este con más terrenos de los Señores Surís, acreditando la propiedad de la tierra hipotecada con una certificación librada por el agrimensor Don Carlos B. Hernández el día quince del mes anterior que exhibieron, para que se agregara al documento y también con las escrituras de compra de 16 de las 17 parcelas mencionadas, cuyos títulos se reseñaron en la escritura de hipoteca.  La certificación citada del agrimensor Hernández acredita haber levantado un plano y calculado la superficie de un lote de tierra de 70 cuerdas de bajura, colindante por el norte con la Hacienda Carolina y herederos de Don Máximo Quiñones; al este, la Hacienda Cristina; al sud, el camino de Cabo Rojo y Don Esteban Bartoli; y al oeste, la Hacienda Carolina y los herederos de Máximo Quiñones.

La mencionada hipoteca fué anotada en 29 de noviembre de 1870 en los libros del antiguo registro de hipoteca.

Doce años después, en 15 de febrero de 1882, y por escritura pública, los hermanos Don José Salvador y Don Ramón Ma. Surís después de reseñar sus 17 títulos agruparon las 17 parcelas, por manifestar que colindaban entre sí formando con ellas una sola finca a la que dieron el nombre de "Perseguida," con 40 cuerdas de tierra dentro de las siguientes co-

lindancias: por el norte, la Hacienda Carolina, propiedad de Vélez Borrero; por el sud, el camino de Cabo Rojo; por el este, más terrenos de los hermanos Surís: y por el oeste, la Hacienda Carolina. Esta agrupación, a la que dieron un valor de 3,000 pesos, fué inscrita a nombre de esos hermanos en el Registro de la Propiedad de San Germán, en el que se mencionaron los distintos títulos de la finca agrupada y la hipoteca de que respondía al hospital de caridad.

Muerto Don Ramón María Surís en el año 1900, por resolución judicial de 20 de abril de 1907, fueron declarados sus herederos su viuda e hijos, quienes presentaron ese documento en el registro de la propiedad donde fué inscrito en 24 de junio del mismo año, 1907, en cuanto al condominio de la mitad proindivisa de la finca "Perseguida."

Por las escrituras públicas de 14 y 22 de julio de 1907, Don José Salvador Surís y la viuda e hijos de Don Ramón María Surís, vendieron a Don Juan Surís Cardona la totalidad de la citada finca "Perseguida" por cantidad de cinco mil quinientos dollars que confesaron tener recibido con anterioridad, cuyas ventas también fueron inscritas en el registro de la propiedad correspondiente.

Algunos días después de esas escrituras de venta, otorgaron otra en 12 del mes siguiente, en la que los vendedores manifestaron que no habían podido entregar la finca a su comprador, porque cuando la venta se verificó, se hallaba poseída ilegalmente por Don Francisco Plácido Quiñones desde 19 de noviembre de 1906 y hasta esa fecha por el Banco de Puerto Rico, desde 14 de agosto de 1905, desde cuya última fecha no han percibido de persona alguna cantidad por rentas, frutos o utilidades, por lo que hacían cesión a su comprador Don Juan Surís Cardona de sus derechos y acciones, para reclamar los frutos producidos o debidos producir por la finca enajenada.

Tal es la historia de la finca "Perseguida" de 40 cuerdas, según el registro de propiedad y el demandante amparándose

en ella, demandó a Don Francisco Plácido Quiñones en acción reivindicatoria y reclamación de frutos, para que con estos se la devolviera, en cuyo pleito intervino el Banco de Puerto Rico citado de evicción por el demandado.

Los hechos en que el demandante apoya su demanda son: que la citada finca ''Perseguida'' conocida también con el nombre de finca del ''Hospital de Caridad'' por consecuencia de la hipoteca sobre ella constituída, la posee ilegalmente y sin título alguno el demandado Don Francisco Plácido Quiñones, toda vez que los dueños de ella nunca se la han venido a él ni a ninguna otra persona; que los hermanos Surís vendieron a Don Pablo María Stefani, dos parcelas de tierra, una de 20 cuerdas y otra de 34 con 900 milésimas, colindantes ambas por el sur y oeste respectivamente con la finca ''Perseguida'' o del Hospital, pero que ésta no le fué vendida y sí dada en arrendamiento en el año 1883, conservándolas en ese concepto hasta que murió: que después de la muerte de Stefani, Schulze y Cía. siguió procedimiento ejecutivo para cobrar a su sucesión cierta hipoteca que aquél había constituído sobre las dos parcelas de 20 y 34 cuerdas, 900 milésimas compradas a los Surís y sobre otras tierras más de su propiedad, y cuando le fueron adjudicadas esas tierras, Schulze y Cía. tomaron en arrendamiento a los dos hermanos Surís las 40 cuerdas de la ''Perseguida'' o del ''Hospital de Caridad,'' juntamente con otros terrenos de ellos y de las Señoritas Surís, mediante contratos que celebraron; y que posteriormente al hacer Schulze y Cía. en 1889 una escritura de agrupación de la Hacienda Ymiza que había adquirido de la Sucesión de Stefani, prescindió de la colindancia del hospital y con la descripción que sin ella hizo de la Ymiza, vino a quedar encerrada dentro de ésta la que es propiedad del demandante, siendo luego en tales condiciones rematada a Schulze y Cía. en liquidación por el Banco de Puerto Rico y a éste adjudicada la Hacienda Ymiza con la ''Perseguida'' en el año 1905, quien posteriormente la vendió a Don Francisco Plácido Quiñones.

Negada esa demanda por el Señor Quiñones y por el Banco de Puerto Rico, manifestó el primero no poseer ilegalmente terrenos de nadie, sino legalmente, de buena fe y con justo título las tierras que compró al Banco de Puerto Rico, por escritura de 19 de noviembre de 1906, y como materia nueva adujo que posee de buena fe las tierras compradas, con la misma que las poseyó el Banco de Puerto Rico y Schulze y Cía. desde que a éste fueron adjudicadas en pleito que siguió contra la Sucesión de Stefani, siendo también por éste poseídas en igual concepto desde mucho antes de 1897 en que falleció: que Don José Salvador y Don Ramón Ma. Surís han residido siempre en San Germán, a poca distancia de la finca poseída por el demandado, así como que los citados hermanos se entendieron siempre con la administración de las tierras de sus hermanas Doña Margarita y Doña Cristina: que el demandante ni sus vendedores han poseído nunca la finca que reclaman, ni la han declarado como suya para la contribución, así como que el ayuntamiento de San Germán, allá por el año 1880 les remató doce cuerdas de esa finca, a pesar de lo que en la escritura de agrupación dijeron que poseían las 40 cuerdas; que el demandante es hijo de Don José Salvador Surís y primo carnal de los otros vendedores, sosteniendo con todos la mayor cordialidad de relaciones íntimas; y por último que desde Stefani hasta el demandado, o sea desde antes de 1887, desde cuya fecha data la posesión del primero, todos han poseído en concepto de dueños, pública, pacíficamente y sin interrupción y con títulos inscritos en el registro de la propiedad, las tierras que constituyen la Hacienda Ymiza, por lo que alega la prescripción de dominio.

En cuanto al Banco de Puerto Rico también negó los hechos esenciales de la demanda, y ambos pidieron que se declarara sin lugar.

Después de oir las pruebas en el juicio, la Corte de Distrito de Mayagüez dictó su sentencia de 7 de mayo de 1909, por la que declaró que los hechos y la ley estaban a favor de los demandados y declaró sin lugar la demanda, con las costas al de-

mandante.  De ella apeló ésta en 26 del mismo mes para ante
esta Corte Suprema, donde se han presentado la transcrip-
ción de los autos, una relación de hechos y alegatos escritos
de todas las partes, habiendo también informado oralmente.

De las pruebas presentadas en el juicio aparece la histo-
ria de la finca "Perseguida" de cuarenta cuerdas, tal como la
hemos consignado al principio y además otros hechos ocurri-
dos en el espacio de años que la misma comprende.

Algunos años después de la escritura de hipoteca a favor
del hospital de caridad, otorgada como queda dicho en 26 de
noviembre de 1870, y por el año 1878 aparece, según certifica-
ción del ayuntamiento de San German, que los hermanos Don
José Salvador y Don Juan María Surís debían tres mil y pico
de pesetas por contribuciones y que para su pago se les em-
bargaron en 15 de junio de 1878, doce cuerdas de terreno en el
barrio de Sabana Eneas que fueron rematadas y adjudicadas
al ayuntamiento, quien a su vez las vendió luego a otra tercera
persona.  En el expediente que con aquel motivo se formó,
comparecieron por escrito Don José Salvador y Don Ramón
Ma. Surís pidiendo que se hiciera la ejecución en otros bienes,
porque los terrenos que habían sido vendidos estaban afecta-
dos al Hospital de la Caridad, siendo desestimada su preten-
sión.

De certificaciones del propio ayuntamiento resulta que se-
gún las planillas por agrícola y repartimientos generales de
los años comprendidos desde 1883 a 1900, no aparece en nin-
guno de dichos años económicos que ni Surís Hermanos, ni
Don José Surís, ni Don Ramón Surís tuviesen repartido tri-
buto alguno por la posesión de esas 40 cuerdas de terreno, ni
de 1900 hasta la fecha, las han declarado en la Tesorería de
esta Isla para el pago de contribuciones.

Un año después del remate de esas doce cuerdas, o sea en
marzo de 1879, los Señores Surís Hermanos se presentaron en
concurso de acreedores ante el Juzgado de Primera Instancia
de San Germán haciendo cesión de sus bienes a favor de sus
acreedores, entre los que incluyeron al Hospital de Caridad;

y en la relación de bienes figuró como único inmueble cien cuerdas de tierra en Sabana Eneas, colindante por el norte con la Hacienda Carolina; por el sud con el camino de Cabo Rojo; por el este con las Señoritas Surís y por el oeste con la Hacienda Carolina. Formaban parte de él una casa de mampostería y otra de máquinas.

En 8 de julio del mismo año el administrador del Hospital de Caridad formuló demanda ejecutiva contra Don José y Don Ramón Surís en cobro de la hipoteca y de sus intereses, despachándose por el juez en 11 del mismo mes y año mandamiento de ejecución y de embargo; pero los hermanos Surís pidieron que ese ejecutivo se acumulase al concurso de acreedores, lo que negó el juzgado y acordó la Audiencia Territorial en 20 de agosto de 1880.

El juicio ejecutivo del Hospital volvió a ponerse en curso cuando, en 8 de febrero de 1882, los dos hermanos Surís fueron requiridos de pago, al que se negaron, porque no habiéndose acordado el desistimiento del concurso ni levantádose el embargo que pesaba sobre sus bienes, no tenían personalidad para recibir el requerimiento, porque estaban concursados y no tenían bienes con que pagar.

En vista de esta contestación, al día siguiente 9 de febrero de 1882, el Alguacil embargó, y entregó a Don Pablo María Stefani en calidad de depósito, cien cuerdas de tierra, con las mismas colindancias que las que en el concurso de acreedores habían declarado como sus bienes.

Después de esta diligencia, no se continuó ese ejecutivo ni se libró mandamiento al Registro de la Propiedad de San Germán para la anotación del embargo, que fué decretada en providencia del siguiente día diez; pero el mismo día del embargo se otorgó el.siguiente documento privado:

"Conste por el presente documento que los abogados firmados hemos convenido y estipulado lo siguiente:

"1°. Don José S. Surís y Don Ramón Surís se encuentran adeudando al hospital de esta ciudad la suma de 3,000 pesos de moneda

española, con réditos vencidos de 9 meses y días y costas que se han causado en el ejecutivo seguido; a cuyo pago han aceptado en hipoteca 40 cuerdas que poseen en el barrio de Sabana Eneas de esta jurisdicción.

"2º. Don Pablo Stefani compra a los mencionados hermanos Surís las referidas 40 cuerdas por la suma de 5,800 pesos: siendo entendido que la escritura de propiedad la pasarán los Surís al administrador del hospital por el importe del capital y rédito del crédito de este establecimiento, según la liquidación que se practique.

"3º. Lo que reste una vez cubierta la suma que arroje la liquidación, hasta los 5,800 referidos, los abonará Stefani para satisfacer 500 pesos de honorarios del Lcdo. Font y demás costas y honorarios que debe Surís satisfacer.

"4º. Los hermanos Surís se comprometen asimismo a pagar las contribuciones que se adeudan y por las cuales el municipio se ha adjudicado 20 cuerdas de los terrenos de la hacienda Cristina, librando así estas cuerdas que vende desde luego a Stefani por la suma de 1,800 pesos, de los que satisfará 1,000 de contado tan pronto como le sea entregado el terreno y 800 a un año de la fecha. Y como constancia firmo con los testigos presentes, dos de un tenor para resguardo, siendo convenido que Stefani pagará los gastos de escritura y titulación. San Germán, 9 de febrero de 1882. (Firmado) P. M. Stefani. Testigos. (Firmado) Pedro Ma. Rossy."

Algunos días después, en 15 de febrero de 1882 fué que los dos hermanos Surís otorgaron la escritura de agrupación bajo el nombre de "Perseguida," con cuarenta cuerdas de tierra, de que dejamos hechos mérito al principio.

En 18 de enero de 1883, o sea un año después del embargo por el hospital, del documento privado y de la agrupación de la "Perseguida," los hermanos Don José Surís, Don Ramón Ma. y Don Epifanio Surís vendieron por escritura pública a Don Pablo María Stefani dos parcelas de tierra, una de 20 cuerdas y la otra de 34 con 900 milésimas, las que según ese documento tenían como colindancia terrenos del Hospital de Caridad, por el sud la primera y por el oeste la segunda. A dicha escritura se agregó un plano levantado por el agrimensor Don Carlos B. Hernández en marzo del año anterior, 1882 en el que la parcela número 3 de 40 cuerdas aparece con

nombre de "Hospital de Caridad," y en ella se hizo constar que las parcelas que se vendían figuran en ese plano con el número dos la de 20 cuerdas y con el 11 la de 34 con 900 milésimas, así como también, que esos terrenos estaban anteriormente vendidos a Stefani, pero que no habían otorgado la escritura por diferencias que habían surgido, las que fueron orilladas por un documento privado de 11 de enero de 1883, por el que se comprometían los hermanos Surís a llevar a efecto el otorgamiento de la escritura de venta, como en ese acto lo verificaban.

En el mismo día en que Stefani compró esas dos parcelas, 18 de enero de 1883, Doña Cristina, Doña Virginia, Doña Luisa y Doña Margarita Surís, le dieron en arrendamiento a Stefani, 69 cuerdas de tierra marcadas con el número nueve en el plano levantado por el agrimensor Hernández y las que entre otras colindancias tenían por el sud, terrenos del Hospital de Caridad.

Cinco años después, en septiembre 1888 la Sociedad Schulze y Cía. seguía pleito contra la Sucesión de Don Pablo María Stefani y para poder anotar en el registro de la propiedad el embargo que hizo en sus bienes, promovió un expediente posesorio que fué aprobado e inscrito el mismo año.

En la solicitud inicial de ese expediente expuso que Stefani y luego su Sucesión, poseyeron en pleno dominio la Hacienda Ymiza en Sabana Eneas, compuesta de 302 cuerdas 41 centavos de tierra, dividida en cuatro cuerpos: el 1°. de 281.97; el 2°. de 10.19; el 3°. de 7.25; y el 4°. de 3 cuerdas. Ese primer cuerpo de 281 cuerdas 97 centavos estaba atravesado de este a oeste por el camino de Cabo Rojo, y también por dos vecinales, pero de norte a sud, y sus colindancias eran por el norte las Señoritas Surís y Sucesión Báez: al este, Santiago Sambolín, la Sucesión Martínez y Jacinta Stefani: al sud, León Negrón, Ramón Gallego, Ulises Ramírez, Sucesión de Juan Angel Cruz, Josefa Sepúlveda, Sinforoso Quiñones y Antonio López: al oeste, Sucesión de Juan Antonio Cruz,

Juan O'Neill, Ramón Camacho, Sucesión Feliciano, Telésforo Vélez, Sinforoso Quiñones y otros.

Que la cabida de esos cuatro cuerpos resulta de la mensura que en esos días se había hecho, que aunque distinta a la que consta en las planillas, consiste en que fueron adquiridas por más o menos.

Manifestaron además, que existían títulos del segundo cuerpo de diez cuerdas 19 centavos, pero no de los cuerpos tercero y cuarto, y en cuanto al primer cuerpo de 281 cuerdas 97 céntimos, sólo habían títulos de 123 cuerdas 15 céntimos y se carecía de ellos del resto de 149.82 que serían objeto de la información de posesión.

En la relación de las distintas adquisiciones de esas 149 cuerdas 82 centavos sin título del primer lote, no aparece ninguna adquirida de los hermanos Surís con cabida de 40 cuerdas.

Ese posesorio se inscribió en el registro de la propiedad en 13 de octubre de 1888.

En 5 de mayo de 1899 Schulze y Cía. otorgó una escritura pública para la agrupación de varias fincas bajo el nombre de Hacienda Ymiza. En ella expusieron que en los ejecutivos que siguieron contra la Sucesión de Stefani le fueron adjudicadas en 9 de febrero de 1899 los bienes que le habían embargado, que consistían en varios lotes, uno de 25 cuerdas en el barrio de Sabana Eneas, colindantes al sud con terrenos del Hospital de Caridad; 34 cuerdas 900 milésimas, con la misma colindancia por el oeste; un cuerpo de 180 cuerdas, y otro de 170, todos los que se inscribieron en 28 de febrero de 1889, motivando la inscripción primera de la finca 566; que este último lote después de medido resultó tener 114 cuerdas 30 céntimos y formaban el cuerpo principal de la Ymiza y contenían los establecimientos de elaborar azúcar, quedando separados, aunque dependientes de ese cuerpo principal, cuatro fracciones más, que con el primer cuerpo totalizan 276 cuerdas, 23 céntimos de tierra, como constituyentes de la Hacienda

Ymiza, menor que la de los títulos, porque en éstos no se hizo por número exacto y también porque habían vendido algo.

Después de esos antecedentes el lote principal de 192 cuerdas 30 centavos se describió así: por el norte, José Boada, Señoritas Surís y Sucesión Báez; por el Sud, el camino de Cabo Rojo y una fracción de José Rabry; al este, Santiago Sambolín; y al oeste, Schulze y Cía. separado por el camino de Bartoli y fracción de José Rabry, encontrándose dentro de ese trozo descrito dos pequeñas fracciones que pertenecen a Sinforoso Quiñones, una de cuatro cuerdas y otra de dos.

Con esta descripción del lote de 192 cuerdas 30 céntimos quedan incluídas en él las 40 cuerdas del Hospital o Perseguida marcada con el número 3 en el plano de marzo de 1882.

Así se desprende del cotejo que hemos hecho de ese plano con el de la Hacienda Ymiza levantado por Don Pedro Viadé en 1907, como también de la declaración pericial del Señor Tomasseti, quien con presencia de esos planos, de la escritura de agrupación hecha por Schulze y Cía. y del deslinde que hizo, llegó a esa conclusión.

La Hacienda Ymiza de 276 cuerdas 23 centimos y con la descripción que se ha indicado, pasó a ser propiedad del Banco de Puerto Rico por adjudicación que se le hizo en ejecutivo que siguió contra Schulze y Cía., y más luego la vendió al actual poseedor Don Francisco Plácido Quiñones.

La demanda afirma que en el año 1883 Don José S. y Don Ramón Ma. Surís dieron en arrendamiento a Stefani el lote de 40 cuerdas reclamadas, y luego a Schulze y Cía. cuando a éstos fueron adjudicados los bienes de Stefani. Así lo declaró Don José Salvador Surís en el juicio, pero lo contradijo Don Federico Philippi, socio que fué de Schulze y Cía. quien declaró haber tenido negocios con Don José S. Surís y con sus hermanos, porque en las operaciones con las hermanas él las representaba: que nunca tomó en arrendamiento terrenos a Don José S. Surís pero a él pagaba los de las Señoritas Surís a quienes él representaba.

En una cuenta de enero 31 de 1890 a 8 de octubre de 1891, pasada a Don José S. Surís por la casa de Schulze y Cía., aparece un asiento que dice: Arrendamiento sobre cuerdas * * *; y un asiento parecido existe en otra de 18 de abril de 1893 a octubre de 1894, en la que el asiento dice: "Arrendamiento S. Quiñones"; pero en 28 de septiembre de 1894 escribía Schulze a Don José S. Surís diciéndole que como no ha vuelto por allá desde que cobró la última suma de arrendamiento, le acompaña la primera contrata que deberá devolverle firmada por sus hermanas y Don Ramón. Pero la carta más explicativa es una que no tiene fecha y que dice así:

"Amigo Surís: Ya se ha pagado el recibo de este mes de mayo que se presentó; en lo sucesivo tienen que venir firmados esos recibos en debida forma pues mientras que vivamos Ud. y yo no hay cuidado, pero el día que faltemos puede haber cuestiones, así es que sólo puede hacerme debidamente los recibos en adelante si vienen firmados por los mismos que han firmado la escritura de arrendamiento que son: Virginia Surís, Cristina Surís, Margarita Surís, R. M. Surís y también que firmen, en persona igual firma del documento y nó como la última vez.

"Suplico a Ud. tome nota de esta. Yo de otro modo no puedo pagar más recibos porque no es conforme a ley.

"Suyo,

"F. Philippi."

Para la resolución del conflicto entre esas declaraciones opuestas, bueno es hacer constar que Don José Salvador Surís dijo en otra parte de su declaración, que a pesar de que había expuesto al ayuntamiento de San Germán que las doce cuerdas de tierra que les había vendido formaban parte de las hipotecadas al Hospital, eso no era cierto y que sólo lo hizo por obstaculizar; también que no presentó ningún documento público ni privado del arrendamiento que se alega y ninguna evidencia presentó en cuanto a su arrendamiento a Stefani de las 40 cuerdas, excepto su propia declaración.

Don José Salvador Surís, Don Ramón Ma. Surís y los herederos de éste, así como Don Juan Surís Cardona, hijo del

primero, han residido siempre en la ciudad de San Germán y a muy poca distancia de la finca que se reclama, según los testigos Avelino Cruz, Gabino García, Francisco Murati y otros.

La legitimidad del documento privado de 9 de febrero de 1882, fué probada mediante las declaraciones de los peritos calígrafos Don Alejandro Díaz y Don Maximino Cuebas, quienes después de cotejar las firmas del mismo con otras indubitadas, declararon que la firma de J. S. Surís que aparece en el documento privado está puesta por la misma mano que estampó las indubitadas; y el segundo, además, declaró lo mismo respecto a la firma de Stefani y del testigo Rossy.

Contra la sentencia que en la corte inferior puso término a este pleito ha alegado el demandante dos clases de errores, unos que se refieren al procedimiento y otros al derecho sustantivo aplicable. Agruparemos los primeros y los trataremos antes de pasar a la segunda clase de errores.

Bajo el primer grupo podemos reunir los errores alegados bajo los números I, VIII y IX, estando formulados en la siguiente manera:

I. La Corte de Distrito de Mayagüez erró al no estimar probados a favor del demandante los hechos contenidos en las alegaciones 8ª., 10ª. y 16ª. de la demanda enmendada, cuyas alegaciones no fueron excepcionadas ni negadas por los demandados.

Para resolver este primer punto es necesario consignar que la demanda fué presentada en 11 de septiembre de 1907, estando jurada en ese día por el demandante y que después de haber sido contestada por los demandados, el demandante pidió permiso, que le fué concedido en 4 de mayo de 1908, para enmendar su demanda, lo que hizo presentando en 13 del mismo mes y año, no una nueva demanda enmendada, sino un escrito que contenía las enmiendas a la demanda, sin que el mismo fuera jurado.

Esto así resulta de la exposición del caso aprobada por el juez, por más que en el legajo de la sentencia aparezca

refundida en una sola alegación como demanda enmendada,
la demanda original con las enmiendas presentadas poste-
riormente, y así es como esa demanda enmendada tiene la mis-
ma fecha de la demanda original, sin contener otro juramento
que el de 11 de septiembre de 1907 que es el de la demanda
inicial.    En resumen, pues, las enmiendas no fueron jura-
das.

La alegación 8ª. original alegaba, que las 40 cuerdas de
tierra que se reclaman no fueron ni son propiedad del hos-
pital, el que nunca tuvo terrenos en aquellos barrios inscri-
tos en el registro; y agregaba que la finca reclamada pertene-
cía a los hermanos Surís de por mitad, y por muerte de Ra-
món María Surís pasó su mitad a sus herederos, siendo actual-
mente dueño de la totalidad Don Juan Surís Cardona por
compra que en cantidad de 5,500 pesos había hecho según es-
crituras de 14 y 22 de julio de 1907, inscritas en el registro de
la propiedad bajo la descripción que actualmente tiene esa
finca.   Y al consignar la descripción de esa finca, la enmienda
adiciona como colindante por el sud la Hacienda Ymiza.

La alegación décima original, expresa que Stefani hipo-
tecó a favor de Schulze y Cía. un lote de 20 cuerdas de tierra
y otro de 34 con 900 milésimas, durante los años 1886 y 1887;
que muerto Stefani, la sociedad acreedora siguió juicio eje-
cutivo contra su sucesión, en el que le fueron adjudicados
entre otros bienes, las fracciones de 20 y 34 cuerdas con 900
milésimas, de las que entró en posesión.

La enmienda para esta alegación, consistió en adicionarle,
que durante la tramitación de ese ejecutivo promovió Schulze
y Cía. un expediente posesorio para inscribir las fincas de
Stefani, sin que en él figurara la finca de 40 cuerdas objeto
de este expediente posesorio, que se aprobó e inscribió a nom-
bre de Stefani y luego de Schulze y Cía.

La 16ª. alegación original relata, que según la escritura
de agrupación otorgada por Schulze en 1899, las fincas de 20
y 34 cuerdas 900 milésimas colindaban con el Hospital de Cari-
dad y con ellas y otras se formó la fracción de 192 cuerdas 30

céntimos, colindando ésta al tiempo de la agrupación por el sud y por el oeste con el Hospital de Caridad; pero que al agruparlas Schulze y Cía. omitieron la mencionada colindancia, sustituyéndola por la de la Hacienda Ymiza, de cuya manera quedaron encerradas las 40 cuerdas de los terrenos llamados del hospital, aun cuando no por eso quedaron inscritas en el registro de la propiedad.

Esta alegación fué enmendada de suerte que quedara suprimido aquello de que por la sustitución de colindancias quedó encerrada la finca objeto del pleito y para consignar en su lugar, que la fracción de 192 cuerdas 30 céntimos, no pudo agruparse porque formada, entre otras, con dos trozos que colindaban y colindan con terrenos del Hospital de Caridad, tales trozos no colindaban ni colindan todos entre sí, porque estaban y están separados por los terrenos del hospital; pero que Schulze y Cía. para agrupar indebidamente los trozos de 20 cuerdas, de 34, 114, 10 y 14 y formar así la fracción de 192 cuerdas 30 céntimos, omitió maliciosamente la colindancia del hospital o la sustituyó por la de la Hacienda Ymiza; y con tal omisión o sustitución ilegal y fraudulenta, los terrenos del hospital quedaron encerrados dentro de la fracción de 192 cuerdas 30 céntimos o dentro de cualquiera de las fracciones del perímetro de la Hacienda Ymiza, aunque por ello la finca reclamada no quedó inscrita en el registro de la propiedad a nombre de Schulze y Cía.

De lo expuesto puede verse que la enmienda a la alegación 8ª. consistió únicamente en la adición de un colindante en la descripción de la finca, y aun siendo cierta esta enmienda, no por ello habría de estimarse que toda la alegación lo era.

La enmienda a la décima no modifica esencialmente la alegación original, negada; y en cuanto a la décima sexta, la mayor parte de la enmienda consiste en consideraciones y apreciaciones del demandante, como consecuencia de lo que relató en la alegación original.

Como ninguna de esas tres enmiendas aducía hecho alguno

esencial para el pleito, el no negarlas, no implica que haya
la corte de tenerlas por ciertas, y mucho menos que por falta
de negación de ellas, aun en el supuesto de contener hechos
esenciales, hubiera de estimarse como ciertos y probados los
restantes particulares de la demanda original que habían sido
negados, por lo que la corte no cometió el error que se le atri-
buye.

Error VIII. La corte inferior erró al no estimar insufi-
cientes tanto la contestación del Banco de Puerto Rico, como
la contestación y materia nueva de oposición del demandado
Francisco Plácido Quiñones.

Hemos consignado al principio cuáles son los hechos esen-
ciales de la demanda y dijimos que habían sido negados por
el Banco de Puerto Rico y por Don Francisco Plácido Qui-
ñones, exponiendo también los hechos que éste adujo como
materia nueva de oposición a la demanda.

Como fundamento del error alegado sostiene el deman-
dante y apelante, que las contestaciones no se ajustan a la ley,
porque el Banco de Puerto Rico niega por información y
creencia hechos aducidos en la demanda, que constan en docu-
mentos públicos, archivados debidamente, siendo algunos de
ellos referentes a la titulación de la Hacienda Ymiza de que
ha sido dueño dicho Banco y que respecto de esos hechos su
contestación y la de Quiñones son evasivas, porque podían
haber examinado esos documentos antes de negarlos o admi-
tirlos.

La manera de negar una demanda jurada, para que consti-
tuya una defensa u oposición a ella es, positivamente, cuando
los hechos están dentro del conocimiento personal del deman-
dado; o por información o creencia, cuando no lo están.

Si los hechos constan en documentos escritos que fueron
otorgados por el demandado, sólo una contestación positiva
será buena, porque presuntivamente los hechos que en ellos
resultan están en su conocimiento personal; pero cuando no
intervino en tales documentos, por no estar los hechos dentro
de su conocimiento *personal* puede contestar por información

y creencia.   (Véase *Curtis* v. *Richard & Valentine,* 9 Cal., 33.)

En el caso presente los hechos negados por información y creencia son todos referentes a hechos que si bien constan en documentos públicos, no intervinieron en ellos *personalmente* los demandados, quienes no están obligados por virtud de una demanda jurada a andar de un archivo para otro, para conocer esos documentos. De admitir la doctrina que pretende sentar el apelante, vendría obligado el demandado en caso de documentos públicos, a examinar aún los archivos de cualquier parte del mundo donde el documento radicara.

Es cierto que algunas de las alegaciones a que se refiere el error alegado se contraen a la titulación de la Hacienda Ymiza, propiedad ahora del Sr. Quiñones y antes del Banco de Puerto Rico, pero aunque son particulares de esa titulación, no constan en documentos en que ellos hayan intervenido *personalmente,* sino en documentos anteriores.

Se alega también que la negación a cierta alegación de la demanda, la 21, es nula porque ésta no contiene un hecho sino una conclusión de derecho que no había necesidad de negar, así como que otra alegación negada, es solamente una nota de la prueba documental de que intenta el demandante valerse en el juicio.

Siendo esto así, no tenían los demandados obligación de negar esas alegaciones y el que lo hayan hecho no anula su contestación ni la hace mala si por haber sido debidamente negados los hechos esenciales de la demanda, constituye una oposición a ésta.   Solamente las alegaciones esenciales de la demanda es preciso negar.

Se alega asimismo que ciertas alegaciones, las 17 y la 18 de la demanda, han sido negadas de una manera insuficiente por el Banco de Puerto Rico, porque no niega separadamente cada hecho de ellas, sino que se admiten unos y se rechazan otros.

La contestación del Banco de Puerto Rico fué respecto de la 17, que reconoce como ciertos los hechos expuestos en el primer período de ella, hasta donde dice "alegación 1ª," y

niega todos los demás.    Con relación a la 18 reconoció. como ciertos los hechos expuestos en su primer párrafo y negó los otros.

Cuando una alegación es compleja, abrazando varias cláusulas o proposiciones, debe negarse *cada parte* de proposición separadamente, siendo insuficiente si se hace disyuntivamente.    (*More* v. *Del Valle,* 28 Cal., 170.)

Aplicando esta doctrina, encontramos buena la contestación del Banco de Puerto Rico a esas dos alegaciones porque distinguió la parte que era cierta, de la que no lo era.

En vista de lo consignado respecto al error que bajo este apartado se atribuye a la corte, encontramos que no la cometió.

Error IX. Una contestación que no aduce hechos suficientes para constituir una oposición a la demanda, o una defensa es nula y debe ser desestimada.

La alegación de este error se basa en que las negaciones contenidas en las contestaciones son evasivas, defectuosas e insuficientes; y además, en que la materia nueva aducida por el demandado Quiñones no es tal por ser inmaterial, inconsistente y redundante, por lo que no pueden ser tomadas en consideración por la corte de acuerdo con el artículo 123 del Código de Enjuiciamiento Civil que dice:

"Las contestaciones especiosas e impertinentes, así como toda materia impertinente y redundante; contenidas en una alegación, podrá no ser tenida en consideración por la corte, a su prudente arbitrio."

Ya hemos dicho antes que las contestaciones del Banco de Puerto Rico y la del otro demandado Quiñones fueron suficientes y de acuerdo con la ley de procedimientos.    Por tanto, ahora sólo habremos de examinar si la materia nueva aducida por el Sr. Quiñones constituía una oposición a la demanda

Al Sr. Quiñones se le reclama la finca "Perseguida" de 40 cuerdas que se alega estar comprendida y encerrada dentro de la Hacienda Ymiza de su propiedad; y si esto es cierto,

la materia que aduce como nueva es pertinente porque en resumen, ella se concreta a alegar que posee la Hacienda Ymiza con justo título de compra, lo mismo que la poseyó el Banco de Puerto Rico, antes Schulze y Cía. y primeramente Don Pablo María Stefani, para por estos hechos alegar la prescripción del dominio que pudiera tener el demandante.

Con sólo lo expuesto queda demostrado que no existe el error alegado.

Resueltos ya los errores aducidos que afectan al procedimiento, entraremos en el otro grupo de errores de carácter sustantivo.

Dice así el error II. La corte de distrito erró al no estimar probados a favor del demandante y en contra del demandado, los hechos referentes al título de propiedad del demandante y su inscripción en el registro de la propiedad.

El fundamento de este error es, que el demandante presentó como evidencia en el juicio las escrituras de las 17 fracciones de terreno que agrupadas forman la finca de 40 cuerdas llamada ''Perseguida'' (sólo presentó 16); la escritura de agrupación de ellas otorgada por Don José Surís y Don Ramón María Surís; la certificación de que ésta fué inscrita en el registro de la propiedad a nombre de dichos señores otorgantes; certificación de haber sido inscrita en la misma oficina la mitad indivisa de Don Ramón María Surís, a favor de sus herederos; escrituras por la que Don José S. Surís y los herederos de Don Ramón María Surís la venden a Don Juan Surís Cardona, con nota de haber sido inscrita en el registro de la propiedad; y que no habiendo sido redargüidos de falsos ni de nulos, justificó su título a la propiedad reclamada, y al no estimarlo así la corte inferior infringió la doctrina del Tribunal Supremo de España, y la de esta Corte Suprema en el caso de *Verges y otros* v. *Domingo Pietri y otros,* cuya doctrina expresa que, para poder utilizar la acción reivindicatoria, se exige necesariamente la existencia de un título cierto sobre las cosas que son objeto de la reivindicación.

Es cierta esta doctrina, pero el hecho de que la corte in-

ferior haya dictado sentencia en contra del demandante, no lleva necesariamente a la conclusión de que haya dejado de aplicar tal doctrina, toda vez que puede haber estimado que Don Juan Surís Cardona ha comprado la finca a que se refiere su título y que sin embargo haya alguna razón legal que impida el que pueda reivindicarla, como si el demandado Quiñones la ha hecho suya por prescripción en vista de otras evidencias aportadas al juicio.

El error III atribuído es por no estimar probados a favor del demandante los hechos que demuestran la identidad de la finca reclamada.

Decimos respecto de este error lo mismo que expusimos en el anterior.

Por el conjunto de la evidencia entendemos, y quizás también la corte inferior fué del mismo parecer, que la finca que los hermanos Surís hipotecaron al Hospital de Caridad, de 40 cuerdas y formada por 16 parcelas que luego agruparon e inscribieron y más tarde vendieron al demandante, está incluída dentro de la superficie de la actual Hacienda Ymiza del demandado Quiñones; pero este hecho solo no lleva necesariamente a la conclusión de una sentencia a favor del demandante.

El IV error se alega consistir, en que no se estimó probado a favor del demandante los hechos que demuestran la posesión en que está el demandado Quiñones, de las tierras en litigio, infringiéndose así el artículo 355 del Código Civil revisado, que manda dirigir la acción reivindicatoria contra el que posea la cosa, o la retenga o detente.

No creemos que se haya cometido el error alegado y lo que hemos consignado respecto a los dos errores anteriores, es aplicable al presente.

El error V lo trataremos al final de los demás por la naturaleza del mismo.

La verdadera cuestión a resolver en este pleito está en los errores VI, VII y X que trataremos juntos, pero antes y como

consecuencia de lo que llevamos dicho queremos concretar, que entendemos justificado que las 17 parcelas que durante los años 1860 a 1870 compraron los hermanos Surís a diversas personas, fueron 16 de ellas, las que hipotecaron al hospital según las colindancias de esa obligación; las mismas que luego con otra parcela más, en total 17, agruparon en 1882 e inscribieron; las mismas que ha comprado el demandante, según dice su escritura, y ellas se hallan incluídas en la Hacienda Ymiza propiedad del demandado Quiñones, quien la adquirió del Banco de Puerto Rico y éste a su vez de Schulze y Cía. quien la hubo de la Sucesión de Don Pablo Stefani.

Veamos ahora, si a pesar de esto ha ocurrido algún hecho que impida el reivindicarlas a Don Francisco Surís Cardona, demandante.

Durante el juicio se presentó un documento privado de 9 de febrero de 1882 y se alega que al admitirlo la corte, cometió error, que se marca VII.

Como fundamento de que no se debió admitir, se dice por el apelante, 1°. que es falso; 2°. nulo; 3°. ineficaz contra tercero y 4°. que están prescritas las acciones nacientes de él.

Al admitir el juez de la corte inferior el documento estimó que no era falso, en vista de la evidencia que se presentó sobre su legitimidad, y no habiéndose alegado ni demostrado que él obrara influído por pasión, prejuicio, parcialidad o grave error al apreciar la evidencia sobre ese punto, no alteraremos la conclusión a que llegó, con mayor motivo porque hemos examinado detenidamente esa evidencia y no abrigamos duda alguna de la legitimidad de tal documento por ser auténticas las firmas puestas a su pie.

Toda la argumentación del apelante respecto a la nulidad de ese documento privado descansa, en que Stefani obraba como apoderado del Hospital de Caridad y no estaba autorizado para consentir por él y en que no tiene la firma de dos testigos.

El primer extremo, descansa en el supuesto erróneo de que Stefani compraba para el hospital y obraba como apoderado

suyo, ya que el hecho de expresarse, que la escritura se otorgara a dicha institución no es suficiente para llegar a esa conclusión.   Según el contexto del documento, quien compra es Stefani y también quien paga el precio, y el disponer que la escritura se haga al hospital podrá indicar otro contrato entre él y ese acreedor, pero no que éste compre directamente a los Surís mediante la representación de Stefani.

En cuando a que la falta de dos testigos en ese documento lo hace nulo diremos que, desde la Novísima Recopilación, ley 1ª., tít., 1º., libro 1º., de cualquier manera que el hombre quiera obligarse, queda obligado, y por tanto la obligación no deja de ser eficaz por falta de requisitos externos.   Además, la cita que hace el apelante de la ley 61, tít. 18, partida 3ª., se refiere a los requisitos de los documentos públicos, exigidos también por nuestra Ley Notarial y la Hipotecaria, y no es aplicable a los documentos privados, para los que ninguna ley exige tal requisito.

Pero se sostiene además, que en todo caso el documento privado es ineficaz para perjudicar a tercero, y que si no es falso ni nulo ese contrato privado, existiría entonces el caso de doble venta de la misma cosa.

Para tratar esta cuestión, es necesario hacer constar, que, al declarar Don José S. Surís, manifestó llevar buenas relaciones con su hijo Juan Surís Cardona, quien según él, no tiene capital ninguno, si bien posee bienes y antes tuvo una casa que ha hecho, nada mas; y que este testigo, que declara detalladamente respecto a hechos ocurridos durante un período de treinta años, que se acuerda hasta de muchos de los colindantes de las fincas que por entonces compró, no recuerda el precio en que la finca reclamada, fué por él y sus sobrinos vendida al demandante.

También consignaremos que meses antes de la venta a Juan Surís Cardona, su padre trató de declarar la finca para los efectos de la contribución y para esos trabajos y para llevar su representación en este asunto buscó un abogado que es el mismo que ahora defiende al demandante, cuyo abogado

por carta se dirigió al Sr. Tomasetti para que le informara en qué parte de la Ymiza estaba la finca en litigio, antes de que como notario autorizara las escrituras de compra del demandante; y hemos de recordar, que antes hemos dicho, que Don Juan Surís Cardona y sus vendedores siempre han vivido en San Germán, llevando buenas relaciones.

Ciertamente es bien extraño que un hijo alegue que lo que su padre le vendió, lo había vendido también antes a otra persona, y pretenda sostener la venta con él en perjuicio de la otra persona que negoció con su padre, amparándose en los preceptos de la ley que amparan en esos casos al primero que inscribe.

Por la manera como han ocurrido los hechos no tenemos duda alguna de que las escrituras de venta de la finca a Don Juan Surís Cardona, no han tenido más objeto sino que él fuera el que presentara el pleito, para ampararse en los derechos de los terceros y así salvar su padre y los herederos de su tío de las consecuencias del documento privado a Stefani; y también estamos convencidos de que el demandante antes de sus compras conocía la historia de la finca, y que su padre y sus primos no la poseían desde 1882 como dice la demanda.

En tales condiciones el demandante no puede acogerse a los beneficios que la ley concede a los terceros, porque no puede serlo quien aunque no intervino en el primer contrato de venta, sin embargo compró, conociendo de que sus vendedores no eran dueños ni tenían la posesión de la cosa vendida. Igual doctrina sentó ya esta corte en el caso de *Voig* v. *Rivas*, decidido en 10 de mayo de 1900.

Además el demandado inscribió antes que el demandante la finca objeto de la demanda, porque la Hacienda Ymiza, dentro de la que según el demandante está comprendida la que reclama por virtud de la agrupación que hizo Schulze y Cía., tiene inscripción anterior en el registro a las escrituras de compra del demandante.

No es exacto como alega el apelante que el precio de la venta estuviera pendiente de una liquidación y que por tanto,

mientras ésta no se practicara, la venta no existía, pues del contexto del citado documento aparece claramente que Stefani compra por la suma de 5,800 pesos, con los cuales pagaría el comprador el crédito debido con sus créditos y las costas. Y que esto lo realizó el comprador, lo demuestra que ordenó se pasara la escritura al 'hospital indudablemente mientras se pagaba, y que no se ha alegado ni probado que los hermanos Surís tuvieran que pagar aquellas cantidades que representaban los 5,800 pesos del precio de la venta.

El precio de la venta quedó entregado desde el momento en que Stefani hizo suyas las responsabilidades de los Surís.

Es inútil determinar si las acciones provenientes del contrato privado han prescrito, porque habiendo sido entregada la cosa vendida y su precio, las acciones para ejercitarlas no tienen ya razón de ser, ni tampoco la del otorgamiento de escritura, porque la finca está inscrita al estarlo la agrupación de la Ymiza, ni se ejercitan ahora esas acciones.

En resumen el contrato privado de compra venta entre los Surís y Stefani es legítimo; es legal y produjo el efecto de trasmitir la propiedad de la finca reclamada, a favor del comprador; perjudica al demandante por las circunstancias que conocía cuando adquirió.

Aunque se formuló objeción contra la admisión del documento privado, lo fué solamente por el fundamento de que las firmas eran falsas; por lo tanto, como se demostró que las firmas no eran falsas, se renunció a todas las demás objeciones. (*Pueblo de Puerto Rico* v. *Silva,* resuelto el 18 de mayo de 1911, y *Falero et al.* v. *Falero,* el 19 de febrero de 1909, por este tribunal.)

Por tanto desde 9 de febrero de 1882 dejaron los Surís de ser dueños de la finca objeto del mismo y desde entonces ha sido poseída pública, quieta y pacíficamente en concepto de dueño por Stefani, luego por Schulze y Cía., quien la agrupó con otras suyas y la inscribió con la Hacienda Ymiza, luego por el Banco de Puerto Rico y últimamente por el Sr. Qui-

ñones, habiendo por tanto transcurrido más de diez años de ésa posesión entre presentes, que es título bastante para adquirir el dominio de prescripción, existiendo como existe justo título de compra y buena fe.

En consecuencia la sentencia que con todos los antecedentes expuestos dictó la Corte de Distrito de Mayagüez, ha sido congruente con lo alegado y probado y es innecesario tratar la reclamación sobre frutos.

Por las razones expuestas, el recurso debe declararse sin lugar, confirmándose la sentencia apelada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández, y Asociados Wolf y del Toro.

El Juez Asociado Sr. Aldrey, no tomó parte en la resolución de este caso.