Rodríguez de Oronoz, Juez Ponente
*742 TEXTO COMPLETO DE LA SENTENCIA
El recurso que nos ocupa interesa la revisión de una resolución emitida por el Tribunal Superior, Sala de Bayamón, denegatoria de una moción de relevo de sentencia bajo la Regla 49.2 de las de Procedimiento Civil.
Dictamos orden sobre mostración de causa dirigida a la parte recurrida para que expusiera las razones por las cuales no debíamos revocar. La parte compareció y los peticionarios replicaron el escrito. Encontrándonos en condición de dictaminar resolvemos, por los fundamentos que pasamos a consignar, que resulta procedente expedir el auto solicitado para anular la resolución recurrida.
I
El 3 de noviembre de 1993 se presentó la demanda en cobro de dinero que dio origen al recurso que nos ocupa. Se expidieron emplazamientos contra los co-demandados el 1 de diciembre de 1993.
El 3 de febrero de 1994 la parte demandante informó al tribunal que no había podido localizar a la parte demandada. Solicitó que se dictara orden disponiendo su emplazamiento por edictos. Acompañó la solicitud con una declaración jurada del emplazador señor Ramón Defilló en la que éste hacia constar las diligencias practicadas para diligenciar los emplazamientos.
El 7 de marzo de 1994 el tribunal ordenó el emplazamiento constructivo de la parte demandada. Realizados los trámites del emplazamiento por edicto, a solicitud de la parte demandante el 26 de septiembre de 1994 se anotó la rebeldía a la parte demandada, y el 18 de octubre de 1994 se dictó sentencia condenando a la parte demandada a pagar solidariamente a la parte demandante la suma de $52,400.00 de principal, intereses, costas y $2,000.00 de honorarios de abogado. La sentencia fue notificada el 26 de octubre de 1994 a Celedonio Corredera y a Nora Soto a la dirección de 17-1 Urb. Los Frailes, Guaynabo, Puerto Rico.
Ocho días más tarde, en específico el 3 de noviembre de 1994, Celedonio Corredera, Nora Soto, la Sociedad Legal de Gananciales por ellos compuesta, Caribbean Solar Products Inc. y Aeromar Viajes Inc. comparecieron al tribunal para solicitar que la sentencia dictada fuera dejada sin efecto bajo las disposiciones de la Regla 49.2 de las de Procedimiento Civil. Los demandados le informaron al tribunal que habían tenido conocimiento del pleito al serles notificada la sentencia. Explicaron que al momento de suscribirse la demanda que dio origen a la sentencia cuyo relevo estaban solicitando, había otro pleito idéntico entre las partes ante otra sala del mismo tribunal; que dicho pleito había sido desistido por los demandantes a la fecha de la presentación de la demanda en este caso; que en el otro pleito se había adquirido jurisdicción personal sobre los demandados y se había celebrado una vista judicial el 11 de junio de 1993 en que ambas partes habían estado representadas por abogado; que la parte demandante tenía la dirección de los demandados y sabía el teléfono y la dirección de su representante legal, razón por la cual hubiese podido notificar a las partes y emplazarlas correctamente; que la declaración jurada sometida en apoyo a la solicitud de sentencia en rebeldía contenía información falsa; que la parte demandada tenía múltiples y sólidas defensas que levantar a las alegaciones de los demandantes.
La parte demandante se opuso al relevo de sentencia solicitado. Luego de varios trámites en el caso, el tribunal dictó la siguiente resolución y orden enmendada:

"Surge tanto de este expediente como del caso DCD-93-0089, que los demandados fueron emplazados a la 
*743
dirección conocida J-17, Urb. Los Frailes. Al no permitírsele acceso fueron emplazados por edictos; se les enviaron los mismo [sic] por correo, y ellos los rechazaron. La alegación de que la declaración jurada en que se basó la sentencia contiene alegaciones falsas es una forma sutil de querer ahora, a esta etapa, dilucidar en su fondo la demanda, a lo cual renunciaron los demandados al no querer contestar la demanda.

Es cierto que el compañero fue abogado de los demandados por [sic] una vista en el Caso DCD-93-0089. Sin embargo la representación legal de los demandantes era otra.

Por lo arriba expuesto, NO HA LUGAR a la Moción de Reapertura bajo la Regla 49.2. No se cumple con los requisitos de dicha Regla,

Inconformes con el anterior dictamen, los demandados instan el recurso de apelación que nos ocupa alegando que el tribunal de instancia erró al no acoger la solicitud de relevo de sentencia presentada, reabrir el caso y permitir la celebración de una vista en los méritos.
Acogimos el recurso como uno de certiorari a la luz del Art. 4.002(c) de la Ley de la Judicatura de 1994. Ordenamos a la parte recurrida que mostrara causa por la cual no debíamos acceder a lo solicitado, esto es, ordenar la reapertura del caso.
Con el beneficio de la comparecencia de ambas partes y teniendo ante nos los autos originales del caso que nos ocupa (DCD-93-0375) y, además, los autos originales del otro caso entre las mismas partes, procedemos a resolver.
n
La Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 49, dispone lo siguiente:

"Mediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:

(1)Error, inadvertencia, sorpresa o negligencia excusable;

(2)Descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(3) Fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de una parte adversa;

(4) Nulidad de la sentencia;

(5) La sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuara en vigor; o

(6) Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. ... La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento.... Esta regla no limita el poder del tribunal para (a) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento; (b) conceder un remedio a una parte que en realidad no hubiere sido emplazada; y (c) dejar sin efecto una sentencia por motivo defraude al tribunal.

*744 De lo anterior se desprende que la Regla 49.2 provee un mecanismo para que una parte pueda solicitar el relevo de una sentencia en su contra, siempre que se cumpla con una de las causales allí enumeradas y que se presente la misma dentro de un término de seis (6) meses de haberse registrado la sentencia.
Existen, además, requisitos que deben cumplirse para que el tribunal en su discreción conceda el remedio solicitado, tales como si el peticionario tiene una buena defensa en sus méritos, el tiempo que medió entre la sentencia y la solicitud de relevo, y el grado de perjuicio que pueda ocasionarle a la otra parte la concesión del relevo de sentencia. Debe considerarse, además, el perjuicio, si alguno, que sufriría la parte promovente de no concederse el remedio solicitado, y si el promovente de la solicitud fue diligente en la tramitación del caso. Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. 283 (1988).
Por otro lado, la Regla 45.3 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 45, está estrechamente relacionada a la 49.2 del mismo cuerpo. La Regla 45.3 permite dejar sin efecto una anotación de rebeldía por causa justificada, mientras que la Regla 49.2 permite el relevo de sentencia en rebeldía por causa justificada. Los criterios inherentes al relevo de sentencia bajo la Regla 49.2 son igualmente aplicables cuando se solicita que una sentencia dictada en rebeldía sea dejada sin efecto. Expresamente el Tribunal Supremo ha resuelto que al solicitarse el relevo de sentencia dictada en rebeldía es crucial la determinación de que si la rebeldía fue producto de la poca diligencia del promovente del relevo o, por el contrario, producto de la confusión causada por actos de la parte a favor de quien se dictó la sentencia. Neptune Packing Corp. v. Wackenhut Corp., supra.
En el caso que nos ocupa la parte demandada solicitó relevo de sentencia bajo la Regla 49.2 alegando en esencia que cumplía con las causales de la Regla 49.2, incisos 1, 3, 14, 5 y 6; que había presentado la solicitud de relevo dentro del término de seis (6) meses de haberse registrado la sentencia; y que, además, cumplía con todos los criterios o requisitos establecidos jurisprudencialmente en Neptune Packing Corp. v. Wackenhut Corp., supra.
En apoyo a su solicitud de relevo los demandados enfatizaron que los demandantes conocían el paradero de los demandados y sabían quién era su abogado, ya que al momento de suscribirse la demanda, tenían pendiente ante otra sala del mismo tribunal un pleito idéntico que llevaba el número DCD-93-0089, el cual habían desistido luego que se adquiriera jurisdicción personal sobre los demandados y se celebrara una vista. Argumentaron los demandados que la declaración jurada sometida por los demandantes para apoyar la sentencia en rebeldía contenía información falsa y que no surgía de dicha declaración cómo se había originado la deuda y cómo era que todos los demandados habían advenido deudores solidarios de la suma reclamada.
En la moción de relevo la parte demandada alegó tener varias defensas que anteponer a las alegaciones, a saber, que ninguno de los demandados había hecho negocios con la parte demandante; que el co-demandado Dr. Juan Marín Santos se había divorciado de la Sra. Nora Soto mediante sentencia final y firme dictada el 15 de febrero de 1985 por lo que nada tenía que ver con los demás demandados, que Caribbean Solar Products Inc. y Aeromar Viajes, Inc. eran entidades corporativas debidamente organizadas en Puerto Rico con personalidad jurídica separada e independiente de la de sus accionistas y no se Ies había emplazado válidamente; y que aunque se negaba la existencia de deuda alguna, de existir la misma, estaría prescrita.
Junto a la moción de relevo, los demandados acompañaron lo siguiente: copia de los documentos del primer caso entre las partes sobre la misma causa de acción (DCD-93-0089); una declaración jurada del co-demandado Celedonio Corredera Pablos sobre los hechos incluidos en la moción de relevo; copia de la sentencia de divorcio del Dr. Juan Ramón Marín Santos y Nora Soto Casanova; y una certificación del Departamento de Estado haciendo constar que Caribbean Solar Products era una corporación debidamente registrada en dicho departamento.
Examinados los documentos que obran en autos forzoso es concluir que la moción de relevo de sentencia cumplía con los criterios inherentes a tal solicitud. Los demandados alegaron buenas defensas en sus méritos y el tiempo que medió entre la sentencia y la solicitud de relevo fue de sólo una semana. El perjuicio que sufriría la parte promovente de no concederse el relevo era evidente: una condena al pago de $54,400.00 sin haber tenido su día en corte. Por otro lado, la concesión del relevo de sentencia no le hubiese ocasionado perjuicio *745 mayor a los demandantes ya que la solicitud de relevo se interpuso inmediatamente después de la sentencia y ni siquiera se había iniciado el proceso de su ejecución. Además, desde la vista celebrada el 11 de junio de 1993 en el primer caso entre las partes los demandantes conocían que los demandados estaban representados legalmente y tenían la intención de defenderse, por lo tanto no estaban ajenos a que el pleito sería contencioso. 
Resulta, pues, que estaban presentes los requisitos exigidos por la ley y la jurisprudencia para que procediera el relevo de la sentencia dictada en rebeldía reabriera para la celebración de una vista en los méritos.
III
Del estudio de los documentos en los autos originales de los dos casos entre las partes resaltan defectos en cuanto a la debida notificación a los demandados.
Como es sabido, en la evaluación de prueba documental, este tribunal está en las mismas condiciones que el tribunal de instancia. Santiago Vázquez v. E.L.A., _ D.P.R. _ (1995), 95 J.T.S. 23, Opinión disidente del Juez Asociado Señor Rebollo López; Díaz García v. Aponte Aponte, 125 D.P.R. 1 (1989); Ramírez Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161 (1989); Fernández v. Hosp. San Carlos Inc., 113 D.P.R. 761 (1983); Pueblo v. Pagán Díaz, 111 D.P.R. 608 (1981); Asoc. Auténtica Empl. v. Municipio de Bayamón, 111 D.P.R. 527 (1981).
Veamos en primer término las normas de derecho y requisitos aplicables. Nuestro Alto Foro ha señalado que "dar a la parte demandada la oportunidad de ser oída es principio esencial de nuestro procedimiento con honda raíz constitucional". Mundo v. Fúster, 87 D.P.R. 363 (1963). Por consiguiente, la indebida notificación a la persona contra la cual se ha instado una acción judicial produce la nulidad de la sentencia dictada por falta de jurisdicción sobre la persona del demandado ya que "el concepto de jurisdicción in personam está inextricablemente atado al debido proceso de ley". Reyes Martínez v. Oriental Federal Savings Bank, _ D.P.R. _ (1993), 93 J.T.S. 50, seguido en Lanzó Llanos v. Banco de la Vivienda de P.R., _ D.P.R. _ (1993), 93 J.T.S. 86.
Como parte de los objetivos del debido proceso de ley, la Regla 4.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 4, enumera las circunstancias en las que una parte demandada puede ser emplazada mediante la publicación de edictos. Los requisitos impuestos por dicha regla persiguen también evitar el fraude. Por eso es que siempre se ha exigido el más estricto cumplimiento con tales requisitos. Mundo v. Fúster, supra; Lanzó Llanos v. Banco de la Vivienda, supra.
La mencionada regla establece, en lo pertinente, lo siguiente:
"Cuando la persona a ser emplazada estuviere fuera de Puerto Rico, o estando en Puerto Rico, no pudiera ser localizada después de realizadas las diligencias pertinentes, o se ocultare para no ser emplazada, o si fuere una corporación extranjera sin agente residente, y así se comprobare a satisfacción del tribunal mediante declaración jurada, con expresión de dichas diligencias, y apareciere también de dicha declaración, o de la demanda jurada presentada, que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden disponiendo que el emplazamiento se haga por un edicto. No se requerirá un diligenciamiento negativo como condición para dictar la orden disponiendo que el emplazamiento se haga por edicto....". (Enfasis nuestro).
En consecuencia, para poder llevar a cabo un emplazamiento por edictos, es necesario que la parte interesada acredite al tribunal el hecho de que ha sido diligente al tratar de localizar a la parte demandada y que, a pesar de las diligencias realizadas para lograr el emplazamiento personal, no ha sido posible su localización.
La declaración que a ese efecto se preste debe contener hechos específicos de esa diligencia y no meras generalidades. Demostrar que se han hecho todas esas diligencias es de incalculable valor para evitar el fraude y la única forma en que puede el juez satisfactoriamente constatar la imposibilidad de notificar personalmente al demandado. Mundo v. Fúster, supra; Lanzó Llanos v. Banco de la Vivienda de P.R., supra.
*746 Sobre las diligencias que deben realizarse y acreditarse por el emplazador en la mencionada declaración jurada, el Tribunal Supremo expresó en el caso de Lanzó Llanos v. Banco de la Vivienda de P.R., supra, lo siguiente:
"Las diligencias que específicamente describimos en Mundo v. Fúster, ante, [inquirir de las autoridades de la comunidad, la policía, el alcalde, del administrador de correos que son las personas más llamadas a conocer la residencia o el paradero de las personas que viven en la comunidad] constituyen meros ejemplos de lo que sería una buena práctica al intentar encontrar al demandado con el propósito de notificarle de la acción instada en su contra. No obstante, las mismas no constituyen una enumeración cerrada de posibilidades, ni puede permitirse que se conviertan en fundamento para la recitación automática de alegaciones evidentemente estereotipadas con elfin de obtener, sin más, la autorización para emplazar por edictos, con total abstracción de las particulares circunstancias del caso de que se trate. Los avances tecnológicos en el campo de las comunicaciones, los cambios demográficos habidos en Puerto Rico, la movilidad de nuestros conciudadanos hacia los grandes centros urbanos, los cambios en los patrones culturales de nuestro pueblo y otra serie de factores que han alterado nuestra forma de vida desde que resolvimos Mundo v. Fúster, ante, hace treinta años, nos obligan a reformular la norma allí expuesta.
Ratificamos una vez más, que para que proceda una orden de citación por edictos, la declaración jurada que le sirve de base tiene que demostrar que el demandante ha realizado gestiones encaminadas en forma eficaz a tratar de localizar al demandado para emplazarlo personalmente y que a pesar de esa diligencia, ha sido imposible localizarlo, debiendo establecer los hechos específicos demostrativos de tal diligencia. Sin embargo, la determinación a ser hecha por el tribunal respecto a si el demandante fue o no diligente en su gestión deberá responder a los hechos particulares del caso. En este contexto, entendemos que en ciertas situaciones resulta totalmente superfluo acudir a la escuela más cercana a la última residencia conocida de un demandado cuando la misma se encuentra a considerable distancia de dicha residencia. Muy poca utilidad puede tener el dirigirse a la alcaldía de un municipio en donde habitan más de 100,000 personas, como resulta ser el Municipio de Carolina, dentro del cual estaba ubicada la última residencia conocida de la causante de los demandados. Por el mismo motivo, en muchas ocasiones es de esperarse que nada se obtenga con acudir al correo más cercano a dicha residencia. Por tanto, la razonabilidad de las gestiones efectuadas dependerá de las circunstancias particulares de cada caso; la suficiencia de tales diligencias se medirá teniendo en cuenta todos los recursos razonablemente accesibles al demandante para intentar localizar al demandado. Para hacer tal determinación, el Tribunal deberá examinar si, a la luz de las circunstancias del caso, las diligencias practicadas con el fin de notificar personalmente al demandado agotaron toda posibilidad razonable disponible al demandante para poder localizar a la parte demandada." (Enfasis nuestro).
A la luz del trasfondo doctrinal antes expuesto, examinemos los dos casos presentados en la Sala de Bayamón del Tribunal Superior.
Primer caso Caso Civil Núm. DCD-93-0089, Sala 502
El 20 de noviembre de 1992 Interamerican Builders Agencies Co., representada legalmente por el Ledo. Mariano Ramírez Benet, suscribió una demanda en cobro de dinero contra Celedonio Corredera Pablos, Nora Soto y Juan R. Marín Santos y/o las Sociedades Legales Gananciales compuestas por ellos y sus respectivos cónyuges h/n/c Caribbean Solar Products Inc., h/n/c Aeromar Viajes, Inc, por la cantidad de $52,400.00. Solicitó le fuera pagada la referida cantidad más intereses, costas por la suma de $10,000.00 y honorarios de abogado por $9,500.00.
El 23 de febrero de 1993 el demandante, sin haber emplazado a la parte demandada, presentó moción solicitando en aseguramiento de sentencia embargar un bien inmueble inscrito a favor de Juan R. Marín Santos y Nora Soto de Marín, a saber, un solar marcado con el número 17 de la manzana de la Urbanización los Frailes, del término municipal de Guaynabo. Acompañó la correspondiente fianza. El 2 de abril de 1993 el tribunal denegó la moción de los demandantes expresando que la misma no cumplía con el caso Connecticut v. Doehr (cita omitida). El tribunal dictaminó que para que pudiera señalarse la vista exigida por tal caso la moción debía ser enmendada a fin de que constaran las alegaciones correspondientes y, además, que los demandados fueran *747 notificados. La parte demandante efectuó los trámites ordenados por el tribunal y se citó a una vista el 11 de junio de 1993, en la Sala 502, para dilucidar la solicitud de aseguramiento de sentencia de los demandantes. A la vista compareció el Ledo. Mariano Ramírez Benet en representación de la parte demandante y el Ledo. Roberto Corretjer Piquer en representación de la parte demandada. Luego que el Ledo. Corretjer indicara al tribunal que los demandantes no habían puesto a los demandados en posición de conocer la reclamación instada el tribunal denegó la moción. Transcurridos cinco meses sin trámite alguno en el caso, el 9 de noviembre de 1993 el juez solicitó a las partes que le informaran el status del caso. Mediante moción suscrita el 30 de septiembre de 1993 por el Ledo. Ramírez Benet, la parte demandante le manifestó al tribunal su deseo de desistir del caso, sin perjuicio. El 5 de octubre de 1993 el tribunal dictó sentencia decretando el archivo del caso por desistimiento.
El 1 de octubre de 1993 Interamerican Builders Agencies Co., representada legalmente por el Ledo. Miguel Mihaljevich, suscribió una demanda en cobro de dinero contra Celedonio Corredera Pablos, Nora Soto y Juan R. Marín Santos y/o las Sociedades Legales Gananciales compuestas por ellos y sus respectivos cónyuges h/n/c Caribbean Solar Products Inc. h/n/c Aeromar Viajes, Inc. por la cantidad de $52,400.00. Solicitó le fuera pagada la referida cantidad más intereses, costas por la suma de $10,000.00 y honorarios de abogado por $9,500.00.
El 1 de diciembre de 1993 se expidieron tres emplazamientos, a saber, a Juan R. Marín Santos, Nora Soto y Celedonio Corredera Pablos, cada uno de ellos por sí y en representación de la Sociedad Legal de Gananciales compuestas con sus respectivos cónyuges h/n/c Caribbean Solar Products, Inc. y/o Aeromar Viajes, Inc. La dirección de las personas y corporaciones a ser emplazadas fue la misma en los tres emplazamientos: 17 J, Urb. Los Frailes, Guaynabo, Puerto Rico. El 3 de febrero de 1994 la parte demandante solicitó emplazar por edictos alegando, conforme la declaración jurada del emplazador Ramón Defilló, que no había podido localizar a los demandados. El 7 de marzo de 1994 el tribunal accedió a lo peticionado y ordenó el emplazamiento por edictos. Ordenó, según lo requiere la Regla 4.5, su publicación en un periódico de circulación general y que se dirigiera a los demandados por correo certificado, una copia de la demanda, del emplazamiento y de la orden y declaración jurada a la última dirección conocida de los demandados. El 15 de agosto de 1994 la parte demandante solicitó se anotara la rebeldía de los demandados y, luego de los trámites de ley, se dictara la correspondiente sentencia.
El demandante presentó al tribunal documentación acreditativa de la publicación del edicto. Presentó, además, la siguiente prueba del envío de los documentos a los demandados: copia de los formularios que acreditaban que una corporación denominada "The Blackton Group Corp." con dirección postal en Santurce, Puerto Rico realizó un envío por correo certificado a los demandados a dos direcciones distintas: J-17 Urb. Los Frailes en Guaynabo y 210 Avenida Domenech, local 4 en Hato Rey. El envío a la dirección de Los Frailes fue devuelto a "The Blackton Group Corp." y en el sobre aparecen las palabras de "Returned to Sender, Unclaimed". El envío a la dirección de la Avenida Domenech fue recibido por Juan Carlos Lebrón Rivera y así consta en los documentos del sistema federal de correo.
Del examen de ambos expedientes podemos llegar a las siguientes conclusiones:

"1) A la vez que los demandantes suscribían una moción de desistimiento en el primer caso el 30 de septiembre de 1993, dichos demandantes preparaban la demanda en el segundo caso el 1 de octubre de 1993.

2) El abogado que suscribió la moción de desistimiento en el primer caso, y el abogado que suscribió la demanda en el segundo caso tenían ambos la misma dirección postal y teléfono, a saber, Box 19768 Fernández Juncos Station, Santurce, Puerto Rico 00910, Teléfono 753-5312. De ello puede inferirse que pertenecían a un mismo bufete legal y/o eran socios y/o compartían gastos en una oficina, de la cual salieron ambos documentos (la moción de desistimiento y la nueva demanda).

3) La demanda en el segundo caso es casi idéntica a la del primer caso, por lo que puede inferirse que fue copiada del expediente del primer caso y que dicho expediente estuvo a la disposición del abogado que preparó la segunda demanda. En consecuencia el abogado que preparó la segunda demanda conocía todos los detalles del primer caso y, además, que el Ledo. Roberto Corretjer Piquer representaba a la parte demandada.

4) Los demandantes conocían una segunda dirección de los demandados, la de la Avenida Domenech 210 en 
*748
Hato Rey, pero no hicieron gestión alguna para emplazarlos personalmente en dichd dirección."

Examinemos ahora la declaración jurada del señor Defilló. Expresó el señor Defilló en su declaración jurada que "recibí de las oficinas del Ledo. Mihaljevich los emplazamientos de este caso dirigidos a los demandados"; que "procedí a visitar la dirección que tenía de los demandados en J-17 Urb. Los Frailes, Guaynabo, la cual es una urbanización cerrada, y conseguí el número de intercome de dicha residencia, el número 029, donde hablé con la cuñada de don Celedonio, (no quiso darme su nombre) y me indicó que aunque vivían todos allí, ninguno de los demandados se encontraba, que estaban de viaje y que regresarían como en dos semanas. Esto fue el día 2 de diciembre de 1993"; que "regresé el día sábado 8 de enero de 1994, a eso de las 6:00 de la tarde y me contestó la misma señora y dijo que ellos volvían el martes próximo 11 de enero. Ese día fui pero nadie contestó el intercome, y como es una urbanización cerrada no pude entrar"-, que "[vjolví el miércoles 20 de enero y me indicó la hija de Don Celedonio, que todos estarían allí durante la semana"; que el "sábado 29 de enero de 1994, hablé con la hija, quien me contestó que no sabía nada de ellos y mucho menos cuando estarían. Pude tener acceso a la urbanización luego de que entrara un chofer de un delivery y toqué en la casa, pero nadie me abrió la puerta. Sólo pude notar los automóviles que allí se encontraban, Pick up Izusu negra, tablilla 417255, Ford Taurus oro AGX 804 y Sunbird rojo BJJ-899que "[vjolví el día 3 de febrero de 1994, a eso de las 4:00 de la tarde y nadie contestó el intercome y no pude entrar a la urbanización"; que "pregunté al Cartero Francisco de Jesús y éste me indicó que no podía dar información alguna pues los reglamentos lo prohibían"; que "en búsqueda que hiciéramos en la guía telefónica, del área de San Juan, no aparece un número registrado a nombre de los demandados Celedonio Corredera Pablos, Juan R. Marín y/o Nora Soto"; que "asimismo pregunté al Policía Torres de Guaynabo y éste me indicó que no conocía al demandado y que no me podía dar información alguna de éste"-, que "por todo lo anteriormente expresado devuelvo los referidos emplazamientos a todos los fines pertinentes."
¿Es suficiente lo expuesto en la declaración jurada del emplazador Defilló para que procediera la citación por edictos y se dispensara del requisito de notificarle personalmente a los demandados?
En primer lugar, las diligencias y gestiones del señor Defilló para llegar a la dirección que constaba en el emplazamiento fueron claramente insuficientes. Se trataba de una urbanización cerrada y el acceso, entre otros medios, pudo lograrse con la ayuda de un alguacil. Además, conociendo los demandantes quién era el abogado de los demandados, nada más fácil que llamar al Ledo. Corretjer Piquer para notificarle del segundo pleito y lograr su ayuda en comunicarse con dicha parte. La juez de instancia restó importancia al pleito anterior entre las partes al momento de denegar la solicitud de relevo. En su resolución enfatizó que era cierto que el Ledo. Corretjer Piquer había sido abogado de los demandados en el primer caso pero concluyó que en el segundo caso la representación legal de los demandantes era otra, dando a entender que el abogado de los demandantes en el segundo pleito no tenía por qué conocer del primer pleito. Como ya vimos, erró la juez de instancia al así concluir.
De la declaración jurada tampoco surge gestión alguna para localizar al co-demandado Juan R. Marín Santos, persona que los demandantes alegaron era co-deudor solidario de la suma adeudada por concepto de mercancía vendida a crédito y no pagada. Nos parece claramente insuficiente las gestiones en cuanto al señor Marín Santos.
Asimismo fueron insuficientes las gestiones en cuanto a las dos corporaciones. Cuando menos, el emplazador pudo ir al Departamento de Estado para inquirir sobre las mismas y conocer sus direcciones físicas y su agente residente.
Las únicas gestiones del emplazador en su intento por encontrar a los demandados nos parecen estereotipadas. No hay detalle alguno de las personas contactadas. En cuanto al cartero Francisco de Jesús no se indica su ruta, ni la oficina donde trabajaba ni la fecha, lugar y hora en que se hizo el contacto con él. En cuanto al Policía Torres, ni siquiera se incluye su nombre completo. Tampoco se indica el cuartel específico de Guaynabo donde trabajaba, el número de su placa o la fecha, lugar y hora en que se realizó la investigación con él. Como destacó el Tribunal Supremo en Lanzó Llanos, ante, en un Municipio donde habitan más de 90,000 personas como resulta ser el Municipio de Guaynabo, muy poca utilidad puede tener el preguntarle a un tal *749 Policía Torres o a un cartero de nombre Francisco de Jesús si en dicho Municipio conoce a un habitante en particular. Igual de ineficaz nos parece la gestión en cuanto a la guía telefónica. En cuanto a las corporaciones demandadas, basta señalar que la declaración jurada no alude a la guía comercial del área de San Juan, la guía donde podrían aparecer las dos corporaciones co-demandadas.
La gestión del emplazador debió responder a los hechos particulares del caso. En este contexto, entendemos que, entre otras gestiones, la parte demandante pudo haber diligenciado los emplazamientos personales en dirección que tenía de los demandados en la Avenida Domenech; pudo haberse comunicado con el representante legal de los demandados, el Ledo. Corretjer Piquer, para inquirir sobre las direcciones físicas y postales de los demandados así como para pedir su ayuda en lograr el contacto con éstos; pudo hacer un esfuerzo para diligenciar el emplazamiento a las dos corporaciones demandadas e ir al Departamento de Estado para conocer quién era su agente residente. Ciertamente, en la declaración jurada presentada en apoyo de la solicitud para el emplazamiento por edictos se excluyó justificar la omisión de otras diligencias, más eticases que las realizadas, que estaban disponibles a la parte demandante a los fines de localizar a dichos demandados.
Entendemos, por tanto, que la declaración jurada en este caso es insuficiente, a la luz de la doctrina vigente. Siendo la declaración jurada insuficiente para justificar la citación por edictos, el tribunal nunca adquirió jurisdicción sobre los demandados y la sentencia dictada es nula e ineficaz.
Debemos finalmente señalar que abrigamos serias dudas sobre la intención real de los demandantes y si realmente querían localizar a los demandados. Debemos recordar que en el primer caso nunca se emplazó a los demandados. Se adquirió jurisdicción sobre ellos cuando comparecieron al tribunal luego de una orden del juez con motivo de la solicitud de aseguramiento de sentencia. Luego de adquirirse jurisdicción sobre los demandados, se desistió el caso y simultáneamente se inició otro pleito idéntico. En el segundo caso las gestiones por emplazarlos no fueron eficaces. Nos parece más bien que los demandantes no estaban en juego limpio. El emplazamiento por edictos en estas circunstancias no puede darle al tribunal jurisdicción sobre los demandados.
IV
Por los fundamentos antes expuestos se dicta sentencia revocando aquella de la cual se recurre y anulando a su vez, la sentencia dictada por el Tribunal Superior, Sala de Bayamón, en el caso civil DCD-93-0375 ya que, al no cumplir la declaración jurada prestada con los requisitos de la Regla 4.5 de las de Procedimiento Civil y los criterios establecidos en Lanzó Llanos v. Banco de la Vivienda, supra, no se adquirió jurisdicción en aquella ocasión sobre la persona de los demandados.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 96 DTA 178
1. Véase Minuta del 11 de junio de 1993 en los autos del Caso Civil Núm. DCD-93-0089.
2. Véase Minuta del 11 de junio de 1993, caso civil DCD-93-0089.